The Guardianship ESTATE OF Morgan Allen PFLANZ, Appellant–Defendant,

v.

Eric DAVIS, Richard Hunter, and Karen Hunter, Appellees–Plaintiffs.

No. 31A04–9605–CV–199.

Court of Appeals of Indiana.

April 21, 1997.

John T. Evans, Marengo, Earl C. Mullins, Jr., Louisville, KY, for Appellant–Defendant.

John B. Drummy, Samuel A. Day and Marti E. Thurman, of Kightlinger & Gray, Indianapolis, for Appellees–Plaintiffs.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The guardianship estate of Morgan Allen Pflanz[1] appeals the trial court's grant of summary judgment in favor of Richard and Karen Hunter in the guardianship's negligence action against the Hunters. We reverse.

### ISSUE

Whether the trial court erred in granting summary judgment in favor of the Hunters.

### FACTS[2]

In August 1993, 18 year-old Eric Hunter asked his parents if he could host an outdoor party on the Hunters' ten acre property in Harrison County. The Hunters agreed to the party; however, they told their son that alcohol was not allowed. On August 6, Eric telephoned several friends and invited them to the party which was scheduled to begin between 9:30 and 10:00 p.m. that evening. The party was held on a hill in a wooded area 200 to 300 yards behind the Hunters' residence. Guests arrived, parked at the side of the Hunters' house, and walked to the party area where Eric had built a bonfire. Mr. and Mrs. Hunter sat on the deck attached to

---

1. The guardianship estate was established pursuant to Indiana statute by a Harrison Circuit Court order in September 1993. The order appointed Pflanz' parents, Henry and Karen Pflanz, as co-guardians of Pflanz' person and estate.

2. We heard oral argument on March 11, 1997, in Indianapolis.

their house and watched the guests arrive. However, the Hunters' view of the party and bonfire area was obstructed by trees.

Guests arrived and departed throughout the evening. Reports on the number of guests range from 30 to 150, and the guests ranged in age from 14 to 25 years old. The party's activities included socializing, listening to music, and, for many of the guests, drinking beer. Approximately 75% of the guests consumed beer, and more than 50% of the guests drank until they were intoxicated. According to guest Shannon Windell, the drinking was "pretty obvious," (R. 555), and no one told the guests that drinking was prohibited. Throughout the evening, Mr. and Mrs. Hunter remained on the deck or in the house watching television. They had told their son that female guests were welcome to use the house's restroom. According to one report, some of the guests carried beers into the house when they went in to use the restroom. The Hunters claim that they saw no evidence of alcoholic beverages at the party.

At approximately 1:00 a.m., 18 year-old guests Morgan Pflanz and Erik Davis began wrestling and horseplaying at the bottom of a hill where the terrain was uneven. There was a sinkhole nearby. Pflanz and Davis were best friends, and it was common for them to engage in horseplay when they were intoxicated. That evening, Davis had consumed approximately twelve twelve-ounce cans of beer and was visibly intoxicated. Jeff Windell intervened and separated the two young men; however, Davis grabbed Pflanz from behind and fell over backwards, pulling Pflanz down with him. According to Eric Hunter, Davis' foot slipped or he tripped, and he fell and pulled Pflanz down with him. Pflanz landed on the ground with his head tipped back in a "little ditch." (R. 556).

Although Pflanz complained of pain, Davis and Windell walked away. A crowd of guests gathered around Pflanz and told him to get up. Ten minutes later Windell returned, and heard Pflanz ask for help. Pflanz told Windell that he had asked party guests to phone an ambulance because he could not feel his legs; however, no one

would do it. The crowd gathered around Pflanz told Windell not to call an ambulance because the police would come. Windell went into the Hunters' home and dialed 911.

When guests learned that Windell had telephoned for an ambulance, most of them left. Eric Hunter, Davis, and others cleaned up the party site and threw beer cans into the woods before the ambulance arrived. Mrs. Hunter was in the living room watching television when she saw the ambulance's flashing lights. She woke up her husband, and the couple followed the paramedics to Pflanz. Pflanz was first transported to the Harrison County Hospital and then to the University of Louisville Hospital where he underwent surgery to fuse his vertebrate. Pflanz' diagnosis is cervical 5 quadriplegia complete.

On November 11, 1994, the guardianship filed a negligence suit against Mr. and Mrs. Hunter and Erik Davis. The Hunters responded with a summary judgment motion, which the trial court granted. The guardianship appeals.

### DECISION

Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 514 (Ind.Ct.App.1994), *reh'g denied.* If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. T.R. 56(E); *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the evidence reveals a good faith dispute as to the inferences to be drawn from those facts. *State v. American Motorists Ins. Co.,* 463 N.E.2d 1142, 1146 (Ind.Ct. App.1984).

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Hermann*, 631 N.E.2d at 511. We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino*, 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *reh'g denied*. The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Summary judgment is rarely appropriate in negligence actions. *Id.*

The tort of negligence is comprised of three elements: 1) a duty on the part of the defendant in relation to the plaintiff; 2) a failure by the defendant to conform its conduct to the requisite standard of care; and 3) an injury to the plaintiff proximately caused by the failure. *Fawley v. Martin's Supermarkets, Inc.*, 618 N.E.2d 10, 12 (Ind.Ct.App. 1993), *trans. denied*. In the absence of the existence of a duty, there can be no negligence. *Id.*

■ The law is well-established that a person entering upon the land of another comes upon the land either as an invitee, licensee or trespasser. *Dunifon*, 665 N.E.2d at 55. The person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Id.* Accordingly, the first step in resolving a premises liability case is to determine the plaintiff's visitor status. *Id.* The visitor status then defines the duty owed from the landowner to the visitor. *Id.* Here, it is undisputed that Pflanz was a social guest, or invitee, on the Hunters' property.

■ A landowner owes the highest duty of care to an invitee. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991), *reh'g denied*. Specifically, a landowner owes an invitee a "duty to exercise reasonable care for his protection while he is on the landowner's premises." *Id.* In *Burrell*, our supreme court adopted the Restatement's definition of this duty:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (citing Restatement (Second) of Torts § 343 (1965)). The duty of reasonable care extends not only to harm caused by a condition on the land but also to activities being conducted on the land. *Wells v. Hickman*, 657 N.E.2d 172, 179 (Ind.Ct.App.1995).

■ The guardianship argues that the trial court erred in granting the Hunters' summary judgment motion because "resolution of the question of the Hunters' breach of their duty ... is a question for the jury." Guardianship's Brief, p. 17. We agree.

■ Where, as here, a duty of care exists, the "determination of whether a breach of duty occurred is a factual question which requires an evaluation of the landowner's conduct with respect to the requisite standard of care." *Kinsey v. Bray*, 596 N.E.2d 938, 944 (Ind.Ct.App.1992), *reh'g denied*, *trans. denied*. In this regard, our supreme court has noted that "if the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury." *Kinsey*, 596 N.E.2d at 944(quoting *Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 114 N.E.2d 873, 875 (1953)(quoting *Gamble v. Lewis*, 227 Ind. 455, 85 N.E.2d 629 (1949))).

Here, the evidence reveals that the Hunters gave their son permission to host an outdoor party which was scheduled to begin between 9:30 and 10:00 p.m.; however, they told him that alcohol was not allowed. Although they prohibited alcohol, the Hunters, who watched the 30–150 guests ranging in age from 14 to 25 arrive and walk to the party and bonfire area which was obstructed by trees, never left their house or deck to monitor the party. Further, although the Hunters watched the guests arrive, when asked if Pflanz appeared to have been drink-

**1152**

ing when he arrived at the party, Mr. Hunter responded that he "couldn't answer that because [he] didn't really pay that much attention." (R. 772). In addition, although female guests apparently carried beers into the house when they went in to use the restroom, the Hunters claim that they saw no evidence of alcoholic beverages at the party.

■ Viewing the evidence in the light most favorable to the guardianship, we find that there are unresolved factual issues as to whether the Hunters breached their duty of reasonable care. Although the trial court may not believe that the nonmoving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct.App. 1995), *trans. denied.* Here, several disputes exist as to the inferences to be drawn from the undisputed facts. Therefore, whether the Hunters breached their duty of care is better left for the jury to decide.[3] *See, Dunifon.*

The Hunters further argue that "any breach of duty was not the proximate cause of Plaintiff's ward's injury." Hunters' Brief, p. 26. However, issues of causation "are most appropriately left for a determination by the trier of fact." *Jump v. Bank of Versailles*, 586 N.E.2d 873, 875 (Ind.Ct.App. 1992). *See also, Booker, Inc. v. Morrill*, 639 N.E.2d 358, 363 (Ind.Ct.App.1994).

Reversed.

RILEY, J., concurs.

RUCKER, J., concurs in result.

---

3. We note that the Hunters attempt to analogize the facts of this case to those in *Baxter v. Galligher*, 604 N.E.2d 1245 (Ind.Ct.App.1992), wherein this court affirmed the trial court's grant of summary judgment in favor of the landowners and against their social guest. Specifically, social guest Baxter was injured during a birthday party at the Galligher's residence when guest Parrish ignited the fringe of guest Walter's shorts, and Walters retaliated by throwing a set of keys at Parrish, striking Baxter's eye. In affirming the trial court's grant of summary judgment in favor of the Galligher's, this court noted that no one, including the Gallighers, had an opportunity to intervene during the approximately 30 second exchange between Walters and Parrish. Here, however, guest Jeff Windell intervened and separated Pflanz and Davis during their initial horseplay. After Windell had intervened, Davis grabbed Pflanz from behind and pulled Pflanz to the ground. Pflanz landed on the ground with his head tipped back and was unable to move. *Baxter* is therefore unpersuasive.