COMMISSIONER, INDIANA DEPART-MENT OF ENVIRONMENTAL MAN-AGEMENT, Appellant–Plaintiff,

v.

Clifford ROLAND, et al., Appellees–Defendants.

No. 45A03–0201–CV–18.

Court of Appeals of Indiana.

Oct. 3, 2002.

Stephen R. Carter, Attorney General of Indiana, Amy E. McDonnell, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David K. Ranich, Natalie V. Shrader, East Chicago, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant, the Commissioner of the Indiana Department of Environmental Management ("IDEM"), appeals the trial court's grant of summary judgment in favor of the Defendants Appellees, Dan McArdle (McArdle) and Rubber Material Handling, Inc. ("RMH").[1]

We reverse and remand.

### ISSUES

IDEM presents two issues for our review, which we restate as:

I. Whether the trial court erred by entering summary judgment in favor of RMH and thereby concluding that RMH was not liable, as a matter of law, for violations of the state's environmental management laws.

II. Whether the trial court erred by entering summary judgment in favor of McArdle and thereby determining that McArdle was not personally liable, as a matter of law, for violations of the state's environmental management laws committed by RMH.

### FACTS AND PROCEDURAL HISTORY

RMH is an Indiana corporation whose sole director, officer and shareholder is McArdle. RMH is a tire recycling facility in East Chicago, Indiana. In 1993, RMH and McArdle hauled tires from the facility to the Roland dump. Although the tires were to remain at the dump only on a temporary basis, they remained there for

---

1. Clifford Roland, Clark Material Handling, Inc., Richard Roland, and the Board of Commissioners of Lake County, Indiana are not parties to this appeal.

eight years. Based upon the hauling of the tires to the Roland dump and the disposal of the tires at the dump in violation of Indiana's environmental management laws, IDEM filed suit against RMH and McArdle, among others. By filing suit, IDEM sought a permanent and mandatory injunction, civil penalties and cost recovery. IDEM subsequently filed a motion for partial summary judgment against McArdle and RMH, and McArdle and RMH also filed a motion for summary judgment. Following a hearing, the trial court magistrate denied IDEM's motion for partial summary judgment against McArdle and RMH and granted McArdle's and RMH's motion for summary judgment. It is from this decision that IDEM now appeals.

## DISCUSSION AND DECISION
### I. GRANT OF SUMMARY JUDGMENT IN FAVOR OF RMH

IDEM contends that the trial court erred by granting summary judgment in favor of RMH. In doing so, the court·ruled that RMH cannot be held liable for any alleged environmental violations as a matter of law.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Relying upon specifically designated evidence, the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the moving party meets these two requirements, the burden then shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in

dispute, or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1200 (Ind.Ct.App.1998), *trans. denied*, 706 N.E.2d 178.

On appeal, this Court is bound by the same standard as the trial court, and we consider only those matters which were designated to the trial court. *Pflanz*, 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Id.* The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.*

We believe some statutory background in this case is helpful. Ind.Code § 13–20–13–12 provides that waste tires are solid waste, unless the facility at which they are stored is registered and stores them in accordance with special rules. The facts of the case before us lead us to the assumption that the Roland dump was not registered in accordance with Ind.Code § 13–20–13 and/or was not storing the tires in accordance with the special rules. Therefore, we will consider, as do the parties in their briefs and as alleged in IDEM's complaint, that the tires involved in the present case are "solid waste."

Ind.Code § 13–30–2–1(5) states generally that a person may not dump or cause or allow the open dumping of garbage or of any other solid waste in violation of the rules of the solid waste management board. 329 IAC 10–4–3 also prohibits open dumps and open dumping. *See also* Ind.Code § 36–9–30–35. In its complaint and amended complaint, IDEM makes a claim against RMH and McArdle pursuant to both Ind.Code § 13–30–2–1 and 329 IAC 10–4–3; however, as we discuss below, only Ind.Code § 13–30–2–1 applies in this particular case.

■ 329 IAC 10–4–4 places the responsibility for open dumps on the owners of the real estate upon which the dump is located and "responsible persons." 329 IAC 10–4–4(b) provides:

> If the commissioner determines that the open dump is or may be a threat to human health or the environment due to a release of contaminants from the open dump into the environment, the commissioner may proceed under IC 13–25–4 and rules adopted under IC 13–25–4–7 that require the owner of real estate upon which an open dump is located or any other responsible persons under IC 13–25–4–8, to perform remedial action, including the installation and monitoring of ground water monitoring wells or other devices.

IDEM argues that RMH is liable and should perform remedial action at the Roland dump because it is a "responsible person" as that term is used in 329 IAC 10–4–4(b). As set forth above, 329 IAC 10–4–4(b) says that the commissioner of IDEM may require the property owners or any other "responsible persons under IC 13–25–4–8" to perform remedial action on the site. In order to determine the members of the category "responsible persons," we must look at Ind.Code § 13–25–4–8.[2] Ind.Code § 13–25–4–8 states, generally, that a "person" who is liable under 42 U.S.C. 9607(a) is also liable to the state. First, we note that the term "person," as used in Ind.Code § 13–25–4–8, includes a corporation. Ind.Code § 13–11–2–158(a). Second, 42 U.S.C. 9607(a)(3) and (4)[3] state

**2.** In pertinent part, Ind.Code § 13–25–4–8 provides:

> (a) Except as provided in subsection (b), (c), or (d), a person that is liable under Section 107(a) of CERCLA (42 U.S.C. 9607(a)) for:
>
> (2) the costs of removal or remedial action incurred by the commissioner consistent with the national contingency plan;
>
> (2) the costs of any health assessment or health effects study carried out by or on behalf of the commissioner under Section 104(i) of CERCLA (42 U.S.C. 9604(i)); or
>
> (2) damages for:
> ( ) injury to;
> ( ) destruction of; or
> ( ) loss of;
> natural resources of Indiana;
>
> is liable, in the same manner and to the same extent, to the state under this section.

**3.** 42 U.S.C. 9607(a) provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (2) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (2) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for

transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

> (2) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for
>
> ( ) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> ( ) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> ( ) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> ( ) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
> * * * * * * *

that any "person" (the term "person" is defined in 42 U.S.C. 9601[4] and, again, includes a corporation) who arranged for the disposal of *hazardous substances* or accepts *hazardous substances* for transport to a disposal or treatment facility is liable for numerous results, including costs of removal, remedial action, and damages. Although both parties to this appeal have agreed that RMH transported the tires to the Roland dump in 1993, neither party provides insight into whether waste tires are not only solid waste but also a "hazardous substance." However, in our research of this case, we have determined that courts have found that tires are not hazardous substances for CERCLA purposes. *See Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 826 (5th Cir.1993), *cert. denied, Cooper v. Armstrong Rubber Co.,* 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994); *see also B.F. Goodrich Co. v. Murtha,* 840 F.Supp. 180 (D.Conn.1993). Thus, RMH is not a "responsible person" as that term is used in 329 IAC 10–4–4(b) and defined in Ind.Code § 13–25–4–8 and 42 U.S.C. 9607(a) because it did not transport and dispose of a CERCLA "hazardous substance." Although RMH escapes liability pursuant to CERCLA, there remains the question of liability pursuant to state law for the improper transport and/or improper disposal of waste tires.

The other code section under which IDEM asserts RMH's liability with regard to the dumping of the tires at the Roland dump is Ind.Code § 13–30–2–1(5) (formerly Ind.Code §§ 13–7–4–1 and 3), which prohibits "a person" from dumping or causing or allowing the open dumping of solid waste. For purposes of Ind.Code § 13–30–2–1(5), the term "person" is defined, in pertinent part, as an individual, a partnership, a copartnership, a firm, a company, and a *corporation.* Ind.Code § 13–11–2–158(a) (emphasis added). Thus, RMH, as a corporation, is prohibited from dumping solid waste in violation of the solid waste management rules. Although in its argument at the summary judgment hearing IDEM relied heavily on RMH's liability pursuant to 329 IAC 10–4–4 and CERCLA, it also referred to Ind. Code § 13–30–2–1(5) in order to establish RMH's responsibility for disposing of the tires at the Roland dump.

With these code sections and proscribed behavior in mind, we now turn to the evidence presented to the trial court. IDEM alleges, and the parties do not dispute, that RMH transported tires to the Roland dump in 1993. Appellant's Brief at 3 and Appellee's Brief at 4. Further, in McArdle's deposition, which was included in the materials designated to the trial court, he stated that RMH hauled tires to the dump. Appellant's Appendix at pp. 176 and 178. IDEM also included its amended complaint in its designated materials. IDEM's amended complaint cites to what was then Ind.Code § 13–7 *et seq.,* as well as specific sections of Title 13, Article 7, including § 13–7–4–1, the predecessor of 13–30–2–1.

More specifically, located within Title 13, Article 7 was Ind.Code § 13–7–23–17 and Ind.Code §§ 13–7–23–17 and 20. The current versions of these code sections, Ind. Code §§ 13–20–13–13 and 13–20–14–7, respectively, provide that the commissioner of IDEM may take appropriate court action to compel "a person" responsible for the improper storage and/or disposal of

---

**4.** 42 U.S.C. 9601 provides, in pertinent part: (21) the term "person" means an individual, firm, *corporation,* association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body.
\* \* \* \* \* \* \*
(emphasis added).

waste tires to undertake removal or remedial action with respect to the waste tires. Ind.Code § 13–20–13–13 provides, in pertinent part:

(a) The commissioner [of IDEM] may proceed in court, by appropriate action, to:

(1) compel a person responsible for the improper storage of waste tires to undertake a removal or remedial action with respect to the waste tires;

\* \* \* \* \*

Likewise, Ind.Code § 13–20–14–7 provides, in pertinent part:

(a) The commissioner may proceed in court, by appropriate action, to:

(1) compel a person responsible for the improper disposal of waste tires to undertake a removal or remedial action with respect to the waste tires;

\* \* \* \* \*

For purposes of Ind.Code §§ 13–20–13 and 13–20–14, the term "person" means "an individual, *a corporation,* a limited liability company, a partnership, or an unincorporated association." Ind.Code § 13–11–2–158(c). Additionally, Ind.Code § 13–20–13–14 and Ind.Code § 13–20–14–8 state that the commissioner may bring a court action to recover costs and damages from a person who is responsible for the improper storage and the improper disposal of waste tires. We take pause here to note that "person responsible," as that term is used in both Ind.Code §§ 13–20–13–13 and 14, and Ind.Code §§ 13–20–14–7 and 8, clearly has a different meaning from the term "responsible person" referred to earlier in our discussion with regard to 329 IAC 10–4–4 and the related CERCLA sections. Thus, it is for the trier of fact to determine whether RMH is liable pursuant to these state statutes.

Moreover, even if the trial court determines that RMH is liable pursuant to the dictates of Ind.Code § 13–20–13–13 and/or Ind.Code § 13–20–14–7, there remains unanswered the practical question of whether RMH is liable because of the circumstances under which it removed the tires from the warehouse in which RMH is located. The evidence designated to the trial court contains statements by McArdle that RMH removed the tires so that a crane could be moved from the property and that all of this had to be done due to a fire on the premises. *See* Appellant's Appendix at 178. Based upon this evidence, there remain factual issues regarding why the tires were moved and whether RMH was directed by other entities to remove the tires. These issues are clearly issues of material fact with regard to the resolution of RMH's liability in this cause. Thus, the trial court erred by entering summary judgment in favor of RMH.

## II. GRANT OF SUMMARY JUDGMENT IN FAVOR OF McARDLE

As a second issue, IDEM asserts that the trial court erred by entering summary judgment in favor of McArdle. Just as it did with RMH, the trial court found that McArdle should be granted summary judgment because the facts of the case are undisputed and that McArdle cannot be held liable for any alleged environmental violations as a matter of law.

The State's theory of liability with regard to McArdle is based upon the responsible corporate officer doctrine. At the time of the hearing on the parties' motions for summary judgment, our state had not definitively adopted the responsible corporate officer doctrine. However, following the hearing, our supreme court handed down its decision in *Commissioner, Dept. of Environmental Management v. RLG, Inc.,* 755 N.E.2d 556 (Ind.2001), in which it applied the responsible corporate officer doctrine to find a corporate officer personally liable for a corporation's violations of the Indiana Environmental Management

Act regardless of whether the doctrine of piercing the corporate veil would produce personal liability. Based upon the court's decision in *RLG*, IDEM filed with the trial court a motion to correct error in the present case. The trial court denied IDEM's motion, and IDEM initiated this appeal.

██ As we stated above, our supreme court adopted the responsible corporate officer doctrine in *Commissioner v. RLG, Inc.* In that case, the court set forth the standard as: (1) the individual must be in a position of responsibility which allows the person to influence corporate policies or activities; (2) there must be a nexus between the individual's position and the violation in question such that the individual could have influenced the corporate actions which constituted the violations; and (3) the individual's actions or inactions facilitated the violations. *RLG*, 755 N.E.2d at 561. Based upon this standard, the evidence designated to the trial court in the case at bar clearly reveals that issues exist surrounding McArdle's liability as a responsible corporate officer. McArdle stated in an affidavit that at the time period in question, he owned 100% of the issued and outstanding corporate stock of RMH. Appellant's Appendix at 94. Further, McArdle testified in his deposition that, although at one time there had been a secretary and a vice president, he has been the sole operator of RMH. Appellant's Appendix at 175. Moreover, IDEM alleges that McArdle made the all-important decision to transport the tires to the Roland dump in 1993, and, in RMH's and McArdle's memorandum to the trial court in support of their motion for summary judgment, they characterize the decision to transport the tires as McArdle's decision. *See* Appellant's Appendix at 84. Although, as our supreme court states in *RLG*, being a sole shareholder and director does not in itself expose the corporate officer to personal liability, the facts of this case are such that the responsible corporate officer doctrine certainly applies. However, whether or not McArdle is liable under that doctrine is a genuine issue of material fact that is best left to the trier of fact.

McArdle argues that the responsible corporate officer doctrine does not apply in this case and that the factors required to pierce the corporate veil and find him personally liable are not fulfilled. However, IDEM does not seek McArdle's personal liability through the piercing of the corporate veil. Rather, it seeks to establish McArdle's liability through the responsible corporate officer doctrine which, contrary to McArdle's assertions, does apply in this case. Therefore, even though McArdle may not be liable under the principle of piercing the corporate veil, he may still be found personally liable pursuant to the responsible corporate officer doctrine. *See RLG, Inc.*, 755 N.E.2d 556. Thus, the trial court improperly granted summary judgment in favor of McArdle, and the newly adopted responsible corporate officer doctrine should be applied to the facts of this case in order to determine whether McArdle is personally liable for RMH's alleged violations of Indiana's Environmental Management Act.

## CONCLUSION

Based upon the foregoing, we conclude that numerous issues of fact remain as to the liability of both RMH and McArdle. Therefore, the trial court erred by entering summary judgment in favor of both parties.

Reversed and remanded for action not inconsistent with this opinion.

DARDEN, J., and MATTINGLY–MAY, J., concur.