**ACCELERATED BENEFITS CORPORATION, Senior Benefits and Planning Services, Inc., Jeffrey C. Collier, Robin L. Collier, and Jess E. Lamonda, Appellants–Defendants**

v.

**Marshall L. PEASLEE, Appellee–Plaintiff.**

**No. 90A02–0404–CV–300.**

Court of Appeals of Indiana.

Nov. 23, 2004.

Richard P. Samek, M. Randall Spencer, Fort Wayne, IN, Attorneys for Appellants.

Terry L. Cornelius, Arthur M. Weingartner, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### *STATEMENT OF THE CASE*

Defendants–Appellants Senior Benefits and Planning Services, Inc. (SBPS), Jeffrey Collier (Collier), and Robin Collier (collectively "Appellants") appeal the trial court's entry of summary judgment in favor of Plaintiff–Appellee Marshall Peaslee.

We affirm.

### *ISSUE*

Appellants present three issues for our review which we consolidate into one dispositive issue: whether the trial court erred in entering summary judgment in favor of Peaslee.

### *FACTS AND PROCEDURAL HISTORY*

Collier is the president of SBPS. Collier and Peaslee met at a seminar put on by Collier and SBPS in 1997. Peaslee later met with Collier in his office to discuss investing Peaslee's retirement funds. In 1997 and 1998, Peaslee, using his retirement funds, bought viatical settlements from Collier and SBPS.[1] Peaslee later filed

---

1. "A viatical settlement is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person—typically an AIDS vic-

suit against Appellants alleging that the viatical settlements were securities and that the Appellants had issued the securities in violation of the Indiana Securities Act (the Act). Peaslee filed a motion for summary judgment, and Appellants filed a motion for partial summary judgment. Following a hearing, the trial court granted summary judgment in favor of Peaslee. Appellants then initiated this appeal.

## DISCUSSION AND DECISION

Appellants contend that the trial court erred in entering summary judgment in favor of Peaslee. Particularly, they assert that the trial court erred in determining that viatical settlements are securities as defined by the Act, that the trial court erred in determining that the promissory notes are not exempt from the registration requirements of the Act, and that the trial court erred in deciding that the Appellants acted as brokers under the Act.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Relying upon specifically designated evidence, the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the moving party meets these two requirements, the burden then shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in

dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the non-movant. *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 419 (Ind.Ct.App.2002).

On appeal, this Court is bound by the same standard as the trial court, and we consider only those matters which were designated to the trial court. *Pflanz*, 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Id.* The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.*

### A. Definition of "Security"

Appellants first claim that the trial court erred in entering summary judgment in favor of Peaslee because it incorrectly included viatical settlements within the definition of the term "security." At the time Peaslee purchased the viatical settlements from the Appellants in 1997 and 1998, the Act did not specifically include the term "viatical settlement" in its definition of the term "security." However, in March 2000, that portion of the Act was amended and now states, in pertinent part:

> (k) "Security" means a note, stock, treasury stock, bond, debenture, evidence of indebtedness, an interest in a limited liability company or limited liability

---

tim—at a discount of 20 to 40 percent, depending upon the insured's life expectancy. When the insured dies, the investor receives the benefit of the insurance. The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefit collected from the insurer, less transaction costs, premiums paid, and other administrative expenses." *Securities and Exchange Comm'n v. Life Partners, Inc.*, 87 F.3d 536, 537 (D.C.Cir.1996).

partnership and any class or series of an interest in a limited liability company or limited liability partnership (including any fractional or other interest in an interest in a limited liability company or limited liability partnership), certificate of interest or participation in a profit-sharing agreement, commodity futures contract, option, put, call, privilege, or other right to purchase or sell a commodity futures contract, margin accounts for the purchase of commodities or commodity futures contracts, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, *viatical settlement contract, any fractional or pooled interest in a viatical settlement contract,* voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title· or lease or in payments out of production under the title or lease, an automatic extension or rollover of an existing security, or, in general, an interest or instrument commonly known as a "security", or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant, option, or right to subscribe to or purchase, any of the foregoing.

Ind.Code § 23–2–1–1(k) (emphasis added). Although the definition of the term "security" in the Act did not specifically set out viatical settlements in its statutory list at the time Peaslee made his purchases, this Court has determined that even prior to its amendment in 2000, Ind.Code § 23–2–1–1 included viatical settlements in its definition of that term. *See Poyser v. Flora,* 780 N.E.2d 1191, 1197 (Ind.Ct.App.2003) and *Security Trust Corp. v. Estate of Fisher ex rel. Roy,* 797 N.E.2d 789, 797 (Ind.Ct. App.2003), *trans. denied,* 812 N.E.2d 796 (2004) (holding that viatical settlements sold prior to the 2000 amendment to Ind.

Code § 23–2–1–1 may qualify as securities, specifically as "investment contracts," if requirements of *Howey* test are satisfied).

■ Therefore, in accordance with our decisions in *Poyser* and *Fisher,* we must determine whether the *Howey* test is fulfilled in order to determine whether the viatical settlements at issue here are securities as defined by the Act. Pursuant to the *Howey* test, an "investment contract" arises whenever a person (1) invests money (2) in a common enterprise (3) premised upon a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others. *Securities and Exchange Comm'n v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Like the appellants in both *Poyser* and *Fisher,* the Appellants in the present case concede the first three factors of the *Howey* test and aver that the fourth factor has not been met. We determined in *Poyser* and *Fisher* that while "the death of the viator ultimately determines the return on the investment [i.e., through no entrepreneurial or managerial efforts of others], the profitability of the return is dependent upon others to analyze and select the viator and policy and to establish the terms under which the policy is purchased." *Fisher,* 797 N.E.2d at 797.

■ Similar to the circumstances in *Poyser* and *Fisher,* the evidence in the present case shows that the success of Peaslee's viatical settlement investment was dependent upon the Appellants' expertise in choosing which life insurance policies to purchase. In support of his motion for summary judgment, Peaslee submitted a Purchaser's Handbook that he was given by Collier that described viatical settlements and guaranteed safe, fixed-rate returns. It also provided examples of settlement returns. Here, each time a policy was purchased with Peaslee's money, he

was given a "Viaticals Closing Package" that contained a letter to Peaslee setting forth the name of the insurance company, the policy number, the name of the insured/viator and the death benefit for the policy. In addition, each package contained a letter from a doctor stating that the doctor had reviewed the medical records of the viator, noting the diagnosis of the illness of the viator and stating an approximate life expectancy for the viator. Thus, it is apparent here, as it was in *Poyser*, that the profits the investors expect to realize depends almost entirely upon the purchaser's expertise in choosing which life insurance policies to purchase. More specifically, the investors rely upon the purchaser's ability to estimate the life expectancy of each prospective viator by obtaining expert medical evaluations of the prospective viator's condition, as well as investigating the prospective viator's life insurance policy to determine the actual death benefit, ensure the policy is not contestable on any grounds, and ensure that the policy is assignable. *Poyser*, 780 N.E.2d at 1196 (*citing Siporin v. Carrington*, 200 Ariz. 97, 23 P.3d 92 (Ariz.Ct.App. 2001)). Therefore, we decline Appellants' invitation to determine that *Poyser* and *Fisher* were wrongly decided.

### B. *Exemption of Notes from Registration Requirement*

Next, Appellants assert that the promissory notes used in Peaslee's acquisition of the viatical settlements are exempt from the registration requirement of the Act. Particularly, they claim that the notes are exempt from registration under the Act because they were allegedly purchased by a trust, and sales to trust companies are exempt under the Act.

■ At this juncture, we disclose more facts regarding the transactions that occurred in this case in order to properly explain and discuss this particular issue. Collier provided to Peaslee the necessary forms and documents required in order for Accelerated Benefits Corporation to purchase viatical settlements on Peaslee's behalf. In order to fund these purchases, Peaslee signed a letter that Collier had prepared which directed the company holding Peaslee's pension funds to forward to Collier a check made payable to Sterling Trust Company. In accordance with arrangements made by Collier, Peaslee's funds were placed in a trust, and the trust then loaned the money to Accelerated Benefits Corporation to purchase the settlements. The loans were evidenced by the promissory notes that Appellants now claim are exempt from registration under the Act. Security interests in the viatical settlement contracts served as collateral for the notes, and each note matured upon the death of the viator whose life insurance policy was the collateral for the note.

Appellants cite Ind.Code §§ 23–2–1–2(b)(8) and (b)(5) in support of their argument that the promissory notes are exempt from the Act's registration requirement. Ind.Code § 23–2–1–2(b)(8) provides:

(b) The following transactions are exempted from the registration requirements of [Ind.Code § 23–2–1–3]:

(8) An offer or sale to a bank, a savings institution, *a trust company*, an insurance company, an investment company [ ], a pension or profit-sharing trust, or other financial institution or institutional buyer, or to a broker-dealer, whether the purchaser is acting for itself or in a fiduciary capacity.

(Emphasis added). Likewise, Ind.Code § 23–2–1–2(b)(5) provides:

(b) The following transactions are exempted from the registration requirements of [Ind.Code § 23–2–1–3]:

(5) A transaction in a bond or other evidence of indebtedness secured by a real or chattel mortgage or deed of trust, or by agreement for the sale of real estate or chattels, if the entire mortgage, deed of trust, or agreement, together with all the bonds or other evidences of indebtedness, is offered and sold as a unit.

We are unmoved by Appellants' disingenuous argument. First and foremost, as the designated materials substantiate, the trust was established with Peaslee's money for the very specific and limited purpose of acquiring viatical settlements as an investment opportunity for Peaslee. A review of the designated materials discloses that Peaslee, not the trust, was given a Purchaser's Handbook containing information about the purchase of viatical settlements. In addition, the Purchase Request Agreement states that it is made "by and between" Accelerated Benefits Corporation and Peaslee, and Peaslee is listed as, and he signed as, "Purchaser." Appellant's Appendix at 46. The agreement also sets out that "Purchaser is desirous of having [Accelerated Benefits Corporation] serve as Agent of Purchaser for the purpose of purchasing death benefits of life insurance policies from people who have been diagnosed as being terminally ill...." Appellant's Appendix at 46. Further, the Viaticals Closing Packages were sent to Peaslee with letters addressed solely to Peaslee explaining and detailing the viatical settlements purchased on his behalf. Thus, the trust mechanism was merely a conduit that the Appellants and Accelerated Benefits Corporation set up and utilized to obtain the viatical settlements, and we will not give it certain status and treatment to which it is not entitled by elevating its form over its true substance. See *Citizens Action Coalition of Indiana, Inc. v. Northern Indiana Public Service Co.,* 804 N.E.2d 289, 301 (Ind.Ct.App.2004) (stating that this Court has indicated its preference to place substance over form). This transaction was not exempt from the registration requirements of the Act.

### C. *Status of Appellants as Brokers*

█ Finally, Appellants aver that the trial court erroneously determined that they acted as "brokers-dealers," "agents," or "investment advisers" as those terms are defined in the Act. Ind.Code § 23–2–1–1(c), in pertinent part, defines "broker-dealer" as: "a person engaged in the business of effecting offers, sales, or purchases of securities for the account of others or for the person's own account." Additionally, Ind.Code § 23–2–1–1(b), in pertinent part, defines "agent" as: "an individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." Finally, Ind.Code § 23–2–1–1(n), in pertinent part, defines "investment adviser" as: "a person who holds himself out to be an investment adviser, or who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues and promulgates analyses or reports concerning securities."

A review of the designated materials reveals that the trial court properly found that the Appellants acted as "brokers/dealers," "agents," and "investment advisers." As discussed above, Peaslee met Collier at a seminar sponsored by Collier and SBPS, and then later met with Collier at his office to discuss investment options for Peaslee's retirement funds. At this meeting, Collier suggested viatical settlements as an investment device. Collier provided Peaslee with and completed the bulk of the neces-

sary forms and documents to obtain the viatical settlements, including the Purchase Request Agreement. Collier also provided Peaslee with the viatical settlements Purchaser's Handbook. Further, it was Collier who prepared a letter directing Peaslee's pension company to forward Peaslee's pension funds to Collier, and it was Collier who arranged for these funds to be deposited in a trust in order to effect the purchase of the viatical settlements. Moreover, Collier signed the Purchase Request Agreement as "Servicing Representative" with an identification number. Thus, having concluded that the trial court correctly found that the viatical settlements sold to Peaslee by and through the Appellants are securities as defined in the Act, we now conclude that the trial court likewise correctly found that the Appellants acted as "brokers/dealers," "agents," and "investment advisers" in effecting such sale.

## CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that the trial court properly entered summary judgment in favor of Peaslee because the viatical settlements sold to Peaslee are securities as that term is defined in the Act, the transaction is not exempt from the registration requirements of the Act, and the Appellants acted as "brokers/dealers," "agents," and "investment advisers."

Affirmed.

MATHIAS, J., and CRONE, J., concur.