Kerwin MASTEN and Heather Masten,
Appellants–Plaintiffs,

v.

AMCO INSURANCE COMPANY,
Appellee–Defendant.

No. 49A02–1009–CT–998.

Court of Appeals of Indiana.

Aug. 24, 2011.

Robert W. Johnson, Steven P. Frank, Tabor Law Firm, LLP, Indianapolis, IN, Randall M. Klezmer, Klezmer Maudlin, Indianapolis, IN, Attorneys for Appellants.

Richard K. Shoultz, Lewis S. Wooton, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issue

Kerwin and Heather Masten (collectively "Plaintiffs") appeal from the trial court's order granting summary judgment to AMCO Insurance Company ("AMCO"). Plaintiffs raise one issue, which we restate as whether the trial court erred in concluding as a matter of law that no underinsured motorist coverage is available to Plaintiffs. Concluding that the trial court erred and coverage is available, we reverse and remand.

### Facts and Procedural History [1]

In 2006, Kerwin was driving in Indianapolis behind Herbert Allison, Jr. Allison stopped abruptly and Kerwin stopped too, successfully avoiding a collision with Allison. Kerwin was then rear-ended, though, by Alice Derin Hanson. The parties' appellate briefs suggest, albeit without certainty, that Gyjuan Robinson's car hit and pushed Hanson's car into Kerwin's car.[2] Kerwin sustained bodily injury.

Plaintiffs, husband and wife, were co-insured by an AMCO policy for damages of up to $100,000 per person and $300,000 per accident caused by uninsured or underinsured motorists. Allison was uninsured. Hanson held a $100,000 per person liability insurance policy with Progressive Corporation. Robinson held a $25,000 per person liability insurance policy with State Farm Mutual Automobile Insurance Company.

Plaintiffs filed suit against Allison, Hanson, and Robinson, and later added AMCO as a defendant to seek payment under the uninsured or underinsured motorist provisions of their AMCO policy.

Subsequently, Plaintiffs settled their claim with Hanson for Hanson's policy limit of $100,000. AMCO then sought summary judgment, arguing that Plaintiffs' settlement with Hanson precluded Plaintiffs' compensation under their AMCO policy. In particular, AMCO pointed to the following portion of the underinsured motorist endorsement in Plaintiffs' policy: "[AMCO's] liability shall be reduced by all sums paid because of the 'bodily injury' . . . by or on behalf of persons or organizations who may be legally responsible." Appendix of Appellants at 151. AMCO argued that Hanson indisputably may be legally responsible for Kerwin's bodily injury, and therefore Plaintiffs' receipt of $100,000 paid on Hanson's behalf reduced AMCO's liability from $100,000 to zero.

Following a hearing, the trial court granted summary judgment to AMCO without entering findings or legal conclusions. Plaintiffs subsequently settled their claim with Robinson for his policy limit of $25,000. Plaintiffs now appeal the trial court's order granting summary judgment to AMCO. Additional facts will be supplied as necessary.

### Discussion and Decision

#### I. Standard of Review

On appeal of a summary judgment order we are bound by the same standard as the trial court, and we consider only those

---

1. We heard oral argument on July 26, 2011 at the courtroom of the Indiana Supreme Court before an audience that included the Indiana Paralegals Association, Inc. ("IPA"). We thank counsel for their able presentations, and the IPA for their interest and spirited discussion following the oral argument.

2. Plaintiffs present this order of the cars in their appellate brief, Brief of Appellants at 2–3, and AMCO agreed in its appellate brief per Indiana Appellate Rule 46(B)(1). At oral argument, however, AMCO stated the order was 1) Allison, 2) Kerwin, 3) Robinson, and 4) Hanson.

materials which the parties designated at the summary judgment stage. *Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We liberally construe all designated evidentiary material in the light most favorable to the non-movant, *Pflanz,* 678 N.E.2d at 1151, and may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes,* 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.*

The moving party bears the burden of showing no genuine issue of material fact in reliance upon specifically designated evidence. *Pflanz,* 678 N.E.2d at 1150. If the moving party satisfies its burden, the burden shifts to the non-movant to set forth specifically designated evidence showing there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley,* 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied.* Even if the facts are undisputed, we must reverse the grant of a summary judgment motion where the record reveals an incorrect application of the law to the facts. *Gen. Accident Ins. Co. of Am. v. Hughes,* 706 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied.*

## II. Automobile Insurance

### A. Interpretation of Underinsured Motorist Endorsement

■■■ Insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law. *Bradshaw v. Chandler,* 916 N.E.2d 163, 166 (Ind.2009). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." *Buckeye State Mut. Ins. Co. v. Carfield,* 914 N.E.2d 315, 318 (Ind.Ct.App.2009), *trans. denied.* Because we construe insurance policies as a whole in each case, prior cases that focus upon similar or identical clauses or exclusions are not necessarily determinative of later cases because the insurance policies as a whole may differ. *See Estate of Kinser v. Indiana Ins. Co.,* 950 N.E.2d 23, 26 n. 2 (Ind.Ct.App.2011). In other words, the same clause may be construed differently in different cases because the identical clauses are only *part* of each insurance policy under consideration. *Id.*

■■■ In addition, where, as here, we interpret an endorsement to an insurance policy, the endorsement "must be read together, construed, and reconciled with the policy to give effect to the whole." *Stevenson v. Hamilton Mut. Ins. Co.,* 672 N.E.2d 467, 473 (Ind.Ct.App.1996), *trans. denied.* We construe the policy and relevant endorsements from the perspective of "an ordinary policyholder of average intelligence," and if "reasonably intelligent people may interpret the policy's language differently," the policy is ambiguous. *Bradshaw,* 916 N.E.2d at 166. Further, we are bound to accept an interpretation of the contract language that "harmonizes the provisions rather than one that supports a conflicting version of the provisions." *Westfield Companies v. Knapp,* 804 N.E.2d 1270, 1274 (Ind.Ct.App.2004), *trans. denied.*

If the language is clear and unambiguous, we give the language its plain and ordinary meaning. An ambiguity exists

where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

*Buckeye,* 914 N.E.2d at 318.

■■■■■ Ambiguities are strictly construed against the insurer, particularly where an exclusion of coverage is concerned. *See, e.g., Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996); *West Bend Mut. v. Keaton,* 755 N.E.2d 652, 654 (Ind.Ct.App.2001) ("While insurers are free to limit the coverage of their policies, such limitations are enforceable only if clearly expressed."), *trans. denied.* In addition, insurance companies can only limit their liability "in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.,* 854 N.E.2d 419, 423 (Ind.Ct.App. 2006).

Plaintiffs' claim against AMCO is based solely on the underinsured motorist endorsement in their policy. AMCO contends the endorsement allows a full set-off for the $100,000 that Plaintiffs received on behalf of Hanson. Resolving this dispute requires our interpretation of the pertinent part of the policy, and in doing so we are well served if we keep in mind the general objectives of underinsured motorist legislation and underinsured policy provisions/endorsements. *See United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 459 (Ind.1999).

■■■■■ Indiana Code section 27–7–5–2 requires that insurers make underinsured motorist coverage available to those whom they insure.[3] In fact, this section is a

"mandatory coverage, full-recovery, remedial statute," considered part of every policy as if included therein. *DePrizio,* 705 N.E.2d at 460. Stated differently, underinsured motorist coverage is "designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents." *Id.* at 459; *see Corr v. Am. Family Ins.,* 767 N.E.2d 535, 540 (Ind.2002) ("[T]he underlying purpose of [underinsured motorist] coverage . . . broadly stated[,] is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance."). A careful study of the significant amendments to Indiana's uninsured and underinsured motorist statute since its inception in 1965 reveals a "history of expanding the availability of . . . coverage[,] [which] manifests an intent by our legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists." *DePrizio,* 705 N.E.2d at 461. Due to the remedial nature of this type of coverage, underinsured motorist legislation is to be liberally construed, and similar to all insurance statutes and policies, is to be read in a light most favorable to the insured. *Id.* at 459–60.

## B. Limit of Liability

■■■■■ Plaintiffs' policy provides for AMCO to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury'. . . . The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use

---

**3.** Amendments to this statute which became effective on July 1, 2011 are irrelevant to our discussion.

of the 'underinsured motor vehicle'." App. of Appellants at 150.

The central issue of this dispute is the meaning of the following "Limit of Liability" provisions in the underinsured motorist endorsement:

B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [ (liability coverage) ] of this policy.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A [ (liability coverage) ], Part B [ (medical payments coverage) ] or Part C [ (uninsured motorist coverage) ] of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

* * *

*Id.* at 151.

Plaintiffs argue that the limit of liability provisions are ambiguous because they could—and per construction of ambiguous provisions in favor of insureds, should—be read to apply only to underinsured motorists as the provisions are located within that endorsement. We agree.

Indeed, each section of the policy includes separate limit of liability provisions. The liability coverage and the medical payments coverage sections include limit of liability provisions altogether different from those in the underinsured motorist endorsement, and the uninsured motorist section includes limit of liability provisions that are phrased almost identically to those in the underinsured motorist endorsement. In *Am. Economy Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162 (Ind.1992), our supreme court construed an uninsured endorsement similarly. The "clearly delineated provisions" in the policy and location of the limit of liability provisions within a clearly marked limit of liability section within the uninsured motorist endorsement led the supreme court to explicitly distinguish it from *Tate v. Secura Ins.*, 587 N.E.2d 665 (Ind.1992), and to conclude the limit of liability applied only to the section of the policy within which it was located.[4] *Am. Economy Ins. Co.*, 605 N.E.2d at 164.

Further, the requirement in AMCO's statement of coverage that "[t]he ... operator's liability ... arise out of the ... use of the 'underinsured motor vehicle,'" App. of Appellants at 150, indicates that payments from those who were not using the underinsured vehicle cannot constitute a set-off. AMCO refers us to cases in which this court held that payments made by tortfeasors who were not using underinsured vehicles constituted valid set-offs against insureds' underinsured motorist coverage. Most notably, in *Grain Dealers Mut. Ins. Co. v. Wuethrich*, 716 N.E.2d 596 (Ind.Ct.App.1999), *trans. denied*, an insured stopped her vehicle for road construction and was rear-ended by a person driving an underinsured motor vehicle. The insured settled with the construction company for $ 150,000 and with the State for $ 1, and sought additional compensation under her underinsured motorist coverage. This court based its conclusion on

---

4. The supreme court also based its decision on additional language in the policy in question, but our point here, similar to our supreme court, is that the location of relevant provisions and clarity of delineation of sections and provisions can be highly persuasive in interpreting insurance policies.

the insurance policy and the "[l]imitations on coverage" statute, which provides:

The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:

(1) the difference between:

(A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and

(B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or

(2) the difference between:

(A) the total amount of damages incurred by the insured; and

(B) the amount paid by or for any person or organization liable for the insured's bodily injury.

Ind.Code § 27–7–5–5(c).

In *Grain Dealers,* this court ruled that sub-paragraph 1 did not restrict set-offs to amounts received from underinsured motorist tortfeasors, and neither did the policy at issue, so the insurer was entitled to a set-off of $150,001. 716 N.E.2d at 599. Similar to *Grain Dealers,* we conclude that the statute does not explicitly limit whose payment constitutes a valid set-off. We focus our ruling here, however, on a distinguishing feature of the AMCO policy which leads to a different result than in *Grain Dealers. See Estate of Kinser,* 950 N.E.2d at 26 n. 2 (stating that because we construe insurance policies as a whole in each case, prior cases that focus upon similar or identical language in a policy are not necessarily determinative of later cases because the insurance policies as a whole are likely to differ). In particular, the AMCO policy makes abundantly clear that it will pay damages that an insured is entitled to receive from "the owner or operator of an 'underinsured motor vehicle,'" and also—unlike *Grain Dealers*—that "[t]he owner's or operator's liability ... *must arise out of the* ownership, maintenance, or use of the 'underinsured motor vehicle.'" App. of Appellants at 150 (emphasis added). This latter statement emphasizes the limited scope of the coverage—and with it the limited scope of any set-off against AMCO's liability—which makes this case different from *Grain Dealers* and others similar to or relying upon *Grain Dealers. See, e.g., Kinslow v. GEICO Ins. Co.,* 858 N.E.2d 109 (Ind.Ct.App.2006) (relying on *Grain Dealers* ); *Hopper v. Carey,* 810 N.E.2d 761 (Ind.Ct.App.2004), *trans. denied* (relying on *Grain Dealers* ).

We next conclude Hanson was not driving an underinsured motor vehicle, and as a result, AMCO cannot set-off the $100,000 payment to Plaintiffs on behalf of Hanson.[5] Plaintiffs' AMCO policy defines "[u]nderinsured motor vehicle" as follows:

a land motor vehicle ... for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is either:

1. Less than the limit of liability for this coverage; or

2. Reduced by payments to persons, other than "insureds", injured in the accident to less than the limit of liability for this coverage.

\* \* \*

App. of Appellants at 150. Paragraph 2, regarding payment to persons other than Plaintiffs, does not apply here. Hanson

---

**5.** Plaintiffs emphasize that no court has found Hanson legally liable, and therefore contend Hanson is not one who "may be legally responsible." We disagree with this specific contention because the policy does not require that one be adjudicated liable to qualify as one who may be legally responsible.

held an insurance policy covering up to $100,000 per person and $300,000 per occurrence. *Id.* at 165. Because Hanson's insurance was not "[l]ess than the limit of liability for [Plaintiffs'] coverage," *id.* at 150, but was in fact equal to Plaintiffs' coverage, Hanson was not driving an "underinsured motor vehicle," *id.* Similarly, Indiana statutory law defines the term underinsured motor vehicle ("subject to the particular terms and conditions of such coverage") as follows:

> [A]n insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident.

Ind.Code § 27–7–5–4(b). Again, because Hanson's limit of coverage for bodily injury is not less than but is equal to Plaintiffs' underinsured motorist coverage, Hanson is not an underinsured motorist.

In sum, because each part of the AMCO policy has its own distinct limit of liability provisions and because the coverage precludes a set-off from one who was not using the underinsured vehicle, "an ordinary policyholder of average intelligence," *Bradshaw,* 916 N.E.2d at 163, could conclude that the limit of liability provisions in the underinsured motorist endorsement only apply to underinsured motor vehicles as defined by the policy, and would not apply to motor vehicles that are equally insured (Plaintiffs' moniker) or fully insured (AMCO's moniker). So even if Hanson might be legally responsible, payment on Hanson's behalf does not set-off AMCO's liability because Hanson was not an underinsured driver. Plaintiffs do concede that Robinson was an underinsured driver, and accordingly the payment of $25,000 they received on Robinson's behalf constitutes a valid set-off of AMCO's liability to Plaintiffs. Brief of Appellants at 8.

### Conclusion

The conclusion that coverage was available harmonizes and gives meaning to each part of the insurance contract and is consistent with the structure of the policy as a whole and within each part. The trial court's order granting summary judgment to AMCO is reversed and this case is remanded for further proceedings.

Reversed and remanded.

RILEY, J., and BARNES, J., concur.