# FOR PUBLICATION



FILED

Aug 30 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**PATRICK A. SHOULDERS**
**JEAN M. BLANTON**
Ziemer Stayman Weitzel & Shoulders
Evansville, Indiana

**KARL L. MULVANEY**
**NANA QUAY-SMITH**
Bingham Greenbaum Doll, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
Beelman Truck Company:

**TODD A. CROFTCHIK**
Seipp & Flick, LLP
Lake Mary, Florida

ATTORNEYS FOR APPELLEE,
North American Capacity
    Insurance Company:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
**DEAN R, BRACKENRIDGE**
**CARRIE G. DOEHRMANN**
Frost Brown Todd, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PEABODY ENERGY CORPORATION, <br> PEABODY COAL COMPANY, LLC, and <br> BLACK BEAUTY COAL COMPANY, <br><br>     Appellants-Defendants and <br>     Third-Party Plaintiffs, <br><br>       vs. <br><br> RICHARD F. ROARK, <br><br>     Appellee-Plaintiff, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 14A01-1112-CT-555<br>)<br>)<br>)<br>) |

|                                                | )   |
|------------------------------------------------|-----|
| and,                                           | )   |
|                                                | )   |
| BEELMAN TRUCK COMPANY,                         | )   |
|                                                | )   |
|     Appellee-Third-Party Defendant, | )   |
|                                                | )   |
|     and,                   | )   |
|                                                | )   |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY,     | )   |
|                                                | )   |
|     Appellee-Third-Party Counterclaim Plaintiff and Third-Party Defendant. | )   |

APPEAL FROM THE DAVIESS CIRCUIT COURT
The Honorable Gregory A. Smith, Judge
Cause No. 14C01-0705-CT-194

**August 30. 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Peabody Energy Corporation, Peabody Coal Company, LLC, and Black Beauty Coal Company (collectively, "Peabody") appeal the trial court's grant of summary judgment in favor of Beelman Truck Company ("Beelman") and North American Capacity Insurance Company ("NAC"). We affirm in part, reverse in part, and remand.

## Issue

The dispositive issue we address is whether Peabody is an additional insured under an insurance policy issued by NAC.

2

**Facts**

Peabody owns property in Daviess County where it conducts mining operations, and Beelman is a trucking company. Beelman and Peabody entered into a Master Performance Agreement ("MPA"), which became effective on April 5, 2005, and continued for an initial term of one year. The MPA defined Peabody as "Owner" and Beelman as "Contractor." App. p. 280. The MPA provided in part:

> 18.    INDEMNITY AND INSURANCE.
>
> A.    Contractor agrees to indemnify, defend, and hold harmless Owner, its parent, subsidiaries, affiliates and related companies and the officers, directors, shareholders and employees of such companies (collectively "Owner") against any and all claims, damages, losses and expenses, including attorney's fees and other legal expenses, by reason of liability imposed or claimed to be imposed by law for damage because of bodily injury (including death) or on account of damage to property, sustained by any person or persons, arising out of or in consequence of the performance of the work called for by the Contract whether or not such bodily injuries, death, or damage to property arise or are claimed to have arisen in whole or in part out of the negligence or any other grounds of legal liability, including violation of any duty imposed by a statute, or ordinance or regulation, on the part of Contractor, the subcontractors, and the employees or agents of Contractor and the subcontractor (but excluding however, any liability caused by the ~~sole~~ negligence or ~~willful~~ misconduct of employees or agents of Owner).[1]
>
> B.    Contractor shall obtain and continue in force, during the term of the Contract at its own expense, the following insurance coverages:

---

[1] The strikethrough modifications were handwritten and initialed.

3

1.     Workers'     Compensation     and
Occupational Disease Disability insurance as
required by the laws of the state wherein the
work is to be performed.

2.       Employer's   Liability   insurance   with
limits of $500,000 each occurrence, unless the
laws of the state in which the work is to be
performed precludes an independent right of
action by an employee against an employer
under common law.

3.       Comprehensive   Automobile   Liability
insurance with limits of $1,000,000 Bodily
injury and Property Damage combined single
limit.

4.       Comprehensive   General   Liability   and
Property    Damage    insurance    including
Operations, Protective, Products/Completed
Operations, Broad Form Property Damage, and
Contractual Liability coverages with limits of
$1,000,000 Bodily injury and Property Damage
combined single limit.

C.     All   insurance   policies   must   contain   an
unqualified provision that the insurance carrier will
give Owner 30 days prior notice in writing of any
cancellation, change or lapse in such policy(s).

D.     All insurance policies shall name Owner, its
parent, subsidiaries, affiliates and related companies,
as additional insureds with respect to losses or claims
arising out of, or directly or indirectly related to, the
performance of this Contract.

E.     The    parties    hereto    acknowledge    that
Contractor's insurance shall be the primary coverage
under the Contract.

F.     Prior to commencement of any work hereunder,
Contractor shall furnish to Owner (in form satisfactory
to Owner) a Certificate of Insurance showing that the

4

> requirements of this Paragraph 17 [sic] have been satisfied.

Id. at 281.

Beelman had a commercial general liability insurance policy ("the Policy") with NAC, which was effective from December 1, 2004, to December 1, 2005. The Policy contained an additional insured endorsement that provided:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART.
>
> **SCHEDULE**
>
> **Name of Person or Organization:**
>
> > Any person or organization to which you are obligated by virtue of written contract to provide insurance such as is afforded by this policy, but only with respect to (1) occurrences taking place after such written contract has been executed and (2) occurrences resulting from work performed by you during the policy period.
>
> (if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

Id. at 209 (emphasis added). A certificate of liability insurance was issued to Peabody referencing the Policy by number. The certificate named Peabody as the certificate

5

holder and provided, "Certificate holder is an additional insured with respect to the auto and general liability." Id. at 289.

Richard Roark was employed by Beelman as a truck driver. On June 22, 2005, while working for Beelman, Roark delivered a load of ash from a power plant to Peabody's mine. Roark backed the Beelman truck into a spot at the mine to dump the load of ash. Roark got out of the truck to release the air brakes, which were controlled by switches on the side of the trailer. As he walked toward the middle of the trailer to release the switches, the ground gave away, and Roark went down into the ground past his knee.

On May 29, 2007, Roark filed a complaint against Peabody alleging that its negligence caused injuries to his left foot. On March 25, 2009, Peabody demanded coverage from NAC. In response, NAC determined that "Peabody is only an additional insured with respect to liability arising out of Beelman's operations or premises owned by or rented to Beelman." Id. at 182. NAC concluded that Roark's claim did not arise "from Beelman's work" and, therefore, NAC had no duty to defend or indemnify Peabody. Id.

Peabody eventually filed a third-party complaint in Roark's lawsuit requesting indemnification from Beelman, alleging that Beelman had breached the MPA, and seeking declaratory judgment regarding NAC's obligation to provide coverage based on the Policy. Beelman and NAC denied the allegations, and NAC sought a declaratory judgment against Peabody. Peabody filed a motion for partial summary judgment against NAC. NAC and Beelman also filed motions for summary judgment against Peabody.

6

After the matter was fully briefed and a hearing was conducted, the trial court entered final judgment in favor of Beelman and NAC and against Peabody. The trial court summarized its twenty-five pages of findings and conclusions as follows:

> A. The MPA excludes, [sic] and Beelman Truck Co. therefore has no duty to indemnify, defend or hold Black Beauty harmless when the sole allegations of negligence are against Black Beauty. The fact that Black Beauty will defend those allegations by alleging that Plaintiff was comparatively negligent does not operate to change that outcome.
>
> B. The only potential risk that needs to be insured against in this case is Black Beauty's own negligent maintenance of its own premises. That is the only negligence alleged in the Plaintiff's Complaint and it is the only negligence for which Black Beauty could be held legally responsible. Paragraph 18 of the MPA does not create or impose a contractual obligation on Beelman, to insure against that specific risk, i.e. the requisite meeting of the minds was lacking.
>
> C. Because Beelman had no contractual duty to insure Black Beauty against claims/losses that Black Beauty negligently maintained its own premises, the insurance policy that is the subject of the Motions for Summary Judgment filed by North American Capacity and Black Beauty is not triggered. Because the MPA does not trigger Beelman's North American Capacity insurance policy, Black Beauty's claims against North American [C]apacity fail.
>
> D. This case will return to its original procedural posture, Black Beauty defending itself against allegations that it negligently maintained premises that it owned and that were under its sole control.

Id. at 40. Peabody now appeals.

**Analysis**

Peabody argues that the trial court improperly granted NAC's and Beelman's motions for summary judgment and denied its motion for summary judgment. "We

7

review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. Id. (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence designated by the parties is construed in a light most favorable to the non-moving party, and we do not defer to the trial court's legal determinations. Id.

Peabody argues that it is entitled to coverage from NAC as an additional insured under the Policy. Alternatively, Peabody argues that, if it is not entitled to coverage under the Policy, Beelman has breached the MPA by failing to provide the insurance described in Section 18(D).[2] Thus, we must first determine whether the Policy provides coverage to Peabody under these circumstances.

"Insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law." Masten v. AMCO Ins. Co., 953 N.E.2d 566, 569 (Ind. Ct. App. 2011), trans. denied. When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the policy, and we construe the policy as a whole and consider all of the provisions of the policy and not just individual words, phrases, or paragraphs. Id. "Because we construe insurance

---

[2] Peabody does not appeal the entry of judgment on its claim for indemnification against Beelman pursuant to Section 18(A) of the MPA.

8

policies as a whole in each case, prior cases that focus upon similar or identical clauses or exclusions are not necessarily determinative of later cases because the insurance policies as a whole may differ." Id.

The relevant portion of the Policy's additional insured endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured <u>but only with respect to liability arising out of your operations or premises owned by or rented to you</u>.

App. p. 209 (emphasis added). In asserting that Peabody's liability does not arise out of Beelman's operations, NAC relies on <u>Liberty Mutual Ins. Co. v. Michigan Mutual Ins. Co.</u>, 891 N.E.2d 99 (Ind. Ct. App. 2008), a case interpreting an additional insured endorsement. In that case, Linda Swann, an employee of Trilithic, slipped and fell on a snow and ice covered pathway leading from the employee parking lot to a door at the back of the Triltihic facility, which Trilithic leased from Duke. Under the lease, it was Duke's responsibility to maintain common areas including the pathway where Swann was injured. In accordance with the lease, Trilithic obtained a commercial general liability policy from Michigan Mutual in which Trilithic was the named insured and an endorsement designated Duke as an additional insured. The additional insured endorsement provided:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule[.]

9

Liberty Mutual, 891 N.E.2d at 100. Swann and her husband sued Duke, and Duke tendered the defense of the action to Michigan Mutual pursuant to the additional insured endorsement. Michigan Mutual declined to defend or indemnify Duke. Litigation ensued between Liberty Mutual, Duke's insurer, and Michigan Mutual, and the trial court eventually declared that Michigan Mutual had no obligation to defend or indemnify Duke against the Swanns' claims.

On appeal, we noted that there were no Indiana cases interpreting the boilerplate additional insured endorsement at issue. Id. at 103. After considering how other jurisdictions had interpreted such provisions, we rejected a broad interpretation of the provision and agreed "that more than an incidental connection with the leased premises is required to obtain coverage under an additional insured endorsement."[3] Id. at 104. We observed:

> One of the primary functions of an additional insured endorsement in the landlord-tenant context is to protect the landlord from vicarious liability for acts of its tenant on the leased premises. Northbrook Ins. Co. v. American States Ins. Co., 495 N.W.2d 450. "The additional insured endorsements in these settings are meant to provide specialized protection

---

[3] The Liberty Mutual court did not reference Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc., 2000 WL 724006 (S.D. Ind. 2000), which interpreted additional insured provisions similar to the one at issue today. The Elkins court observed:

> Although the court cannot locate any reported opinions discussing the construction of "additional insured" provisions under Indiana law, the majority of courts to have considered the issue construe such provisions (which rely on language very similar to, or identical to, the language used in the additional insured provisions in the [relevant] policies) broadly, encompassing coverage to extend to liability beyond merely the additional insured's vicarious liability for the actions of the named insured.

Elkins, 2000 WL 724006 at 2 (footnote omitted).

10

> rather than all-encompassing coverage." <u>United States Fid. &</u>
> <u>Guar. v. Drazic</u>, 877 S.W.2d at 143.

<u>Id.</u>

In analyzing the connection between the accident and the leased premises, we considered that the accident occurred in a common area outside of the leased premises and under Duke's control, that there was no physical connection between the accident and the leased premises or Trilithic's business operations thereon, and that there was no allegation that the ice and snow on which Swann slipped was caused by the leased premises, was connected to work done on the leased premises, or had any other significant connection with the leased premises. <u>Id.</u> at 105. We observed that the accident arose out of Duke's own failure to maintain the pathway from the parking lot to the employee entrance and that "[t]he only way Swann's fall was even remotely related to the leased premises was due to the fact Swann was on her way to work." <u>Id.</u> We deemed this "isolated connection" to be insufficient to bring the accident within the coverage of the policy under the additional insured endorsement and held that Michigan Mutual had no duty to defend or indemnify Duke. <u>Id.</u>

Even if we agree with <u>Liberty Mutual</u> that an expansive interpretation of an additional insured endorsement such as the one here should be rejected, <u>Liberty Mutual</u> does not resolve the question of whether Peabody is entitled to coverage under the Policy. The policy language and facts of <u>Liberty Mutual</u> are easily distinguishable from the policy language and circumstances before us today.

11

First, although both cases apparently involve negligence claims based on premises liability theories, the relevant policy language is different. At issue here is whether the liability arises "out of [Beelman's] operations," not whether the liability arises out of "ownership, maintenance or use of" a leased premises, which was at issue in Liberty Mutual. App. p. 209; Liberty Mutual, 891 N.E.2d at 100. Thus, although Liberty Mutual's focus on the "connection with the leased premises" may be appropriate in the landlord-tenant context, is of limited application here. Id. at 104.

In that regard, NAC's suggestion that Peabody's potential liability arises out of Peabody's own alleged negligence in maintaining its own property misses the mark because it does not resolve the question of whether Peabody's potential liability arises out of Beelman's operations. NAC also asserts that there is no contention that Peabody's liability "arose out of the actions of" Beelman and that Peabody does not face "liability for Beelman's operations." Appellee NAC's Brief p. 14. Because these assertions are more narrowly worded than the actual language of the Policy, which refers to "liability arising out of [Beelman's] operations," they are of little help in determining whether Peabody is an additional insured under the Policy. App. p. 209.

Aside from the differences in the policy language, Liberty Mutual is also factually distinguishable because Roark was not on Peabody's property as a means to an end—to get to work—as Swann was. Instead, Roark was at Peabody's mine as part of his employment as a truck driver for Beelman.[4] According to Roark's complaint, while

---

[4] In its brief, Beelman does not dispute that Roark was at the mine "because of his employment with Beelman." Appellee Beelman's Br. p. 5.

12

working for Beelman, he delivered a load of ash from a power plant to the mine, where he stepped in a hole and was injured. NAC's letter denying coverage provides, "On June 22, 2005, Mr. Roark allegedly delivered a load of ash from the Petersburg Power Plant to the defendants' mine. During his delivery, Mr. Roark allegedly stepped in a hole and suffered bodily injuries." Id. at 180. In his deposition, Roark stated that he was directed to drive the truck to "the high wall." Id. at 607. According to Roark, he backed the truck toward that area and then secured the truck. Roark described that process of securing the truck and how he was injured as follows:

> Lock the brakes on it, trailer and the truck, and you get out. And all the Beelman trucks had outside switches which released the air bags on the truck so it would be solid when you raised it up in the air, you release the air brakes. You got switches on the side of the trailer. That's where I'm walking when I step, when the ground gives away. I'm walking back to the middle ways of the trailer to release those switches, and the ground give way, and I went down into the ground up past my knee.

Id. at 608.

The parties do not direct us to any designated evidence suggesting that Roark was injured while acting outside the scope of his employment or while undertaking a task unrelated to Beelman's operations when he was injured. Cf. Davis v. LTV Steel, Co., 716 N.E.2d 766 (Ohio App. 1998) (concluding that LTV was not an additional insured "with respect to liability arising out of [Shafer's] operations" for injuries incurred by Shafer employees who were injured on LTV's premises while performing a task "not contemplated as part of Shafer's duties pursuant to its contract with LTV."). Unlike in Liberty Mutual, the connection between Roark's presence at the mine and his injuries

13

was not "incidental" or "isolated;" instead, Roark's injuries were directly related to his work as a truck driver for Beelman. Liberty Mutual, 891 N.E.2d at 104, 105. Regardless of whether Roark was injured because of Peabody's sole negligence, the designated evidence shows that Roark's injuries—the basis of Peabody's potential liability—arose out of Beelman's operations. Thus, Peabody is an additional insured under the Policy.

As such, the trial erroneously entered summary judgment in favor of NAC and against Peabody regardless of the language of the MPA. Because of our conclusion that Peabody is an additional insured under the Policy, we necessarily conclude that Beelman did not breach the MPA. Therefore, the trial court properly granted Beelman's motion for summary judgment.

### Conclusion

Because Roark's injuries arose out of Beelman's operations, Peabody is an additional insured under the Policy. As such, Peabody, not NAC, is entitled to summary judgment on the declaratory judgment action. Further, because Peabody is an additional insured under the Policy, Beelman did not breach the MPA. Thus, summary judgment in favor of Beelman was appropriate. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.

14