## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 04 2016, 9:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Storrs W. Downey
Jeffrey E. Kehl
Bryce Downey & Lenkov LLC
Chicago, Illinois

ATTORNEY FOR APPELLEE

Kevin W. Marshall
Hobart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mt. Vernon Fire Insurance Co., <br> *Appellant-Respondent* <br><br> v. <br><br> Louis Jancetic, <br> *Appellee-Movant* | November 4, 2016 <br><br> Court of Appeals Case No. <br> 45A05-1607-PL-1696 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Calvin D. Hawkins, Judge <br><br> Trial Court Cause No. <br> 45D02-1205-PL-12 |

**Baker, Judge.**

[1] Mount Vernon Fire Insurance Company (Mount Vernon) appeals the judgment of the trial court, which, in a proceeding supplemental, found that an insurance policy issued by Mount Vernon covered a judgment against its insured, Source One Partners, LLC (Source One). Finding that the insurance policy clearly and unambiguously excluded intentional misrepresentations from coverage, we reverse and remand with instructions to enter summary judgment in Mount Vernon's favor.

## Facts

[2] In October 2011, Debra Hadu sold a property—through Source One, her real estate agent—in Crown Point to Louis Jancetic. As part of the transaction, Hadu filled out a disclosure form. On February 28, 2012, Jancetic filed a complaint, alleging that Source One and Hadu knew that there was a mold problem stemming from a water leak but represented in the disclosure form that there was no mold problem on the property. Jancetic further alleged that, because of this "fraudulent representation[]," he agreed to purchase the property and sustained damages thereby. Appellant's App. p. 75. Jancetic later amended the complaint to add a home inspection company, which he alleged had been negligent in failing to find the mold, as a defendant.

[3] Source One had a "Real Estate Agents Errors And Omissions" insurance policy (the Policy) with Mount Vernon. *Id.* at 188. The Policy protected Source One from claims arising from negligent acts, errors, or omissions; personal injuries; allegations of discrimination; or improper use of the lock box on houses. The

Policy explicitly excluded from coverage "any claim arising out of . . . any actual or alleged . . . dishonest, fraudulent, criminal or malicious act or omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any Insured." *Id.* at 191-92. The Policy also states that it "does not apply to . . . [claims] arising out of . . . any form of Organic Pathogen, whether or not . . . it is alleged that an Insured failed to discover or disclose the existence of Organic Pathogens from any source whatsoever." *Id.* at 192, 179. "Organic Pathogens" was defined as "any organic irritant or contaminant, including but not limited to mold . . . ." *Id.* at 179.

[4] On March 27, 2012, Source One tendered Jancetic's complaint to Mount Vernon, but Mount Vernon disclaimed coverage the following day, believing that Jancetic's claims were excluded under the Policy. *Id.* at 96. Source One did not dispute Mount Vernon's analysis, and neither Source One nor any other party to the lawsuit involved Mount Vernon further.

[5] Jancetic eventually settled with Hadu, but Source One filed for bankruptcy protection. After obtaining relief from the bankruptcy stay, Jancetic pursued his case against Source One at an August 17, 2015, bench trial. Source One did not attend the trial. Jancetic presented evidence regarding the expenses he incurred fixing the water and mold problems in the house. He also testified that the furnace and the sump-pump had to be replaced. Altogether, the cost of rebuilding, testing for mold, and removing moisture totaled $149,496.33, and the trial court entered judgment against Source One in that amount.

On September 17, 2015, Jancetic filed a verified motion for proceedings supplemental, seeking to recover from Mount Vernon pursuant to the Policy. After Mount Vernon filed an answer, the parties filed several motions to the trial court, including a "Motion for Judgment" from Jancetic and a motion for summary judgment from Mount Vernon. On July 1, 2016, the trial court granted Jancetic's "Motion for Judgment," denied Mount Vernon's motion for summary judgment, and entered judgment against Mount Vernon in the amount of $149,496.33. Mount Vernon now appeals.

## Discussion and Decision

A proceeding supplemental is not an independent action asserting a new or different claim from the claim upon which the judgment was granted, but is merely a proceeding to enforce the earlier judgment. *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 858-59 (Ind. Ct. App. 1998). In proceedings supplemental to recover judgment from a liability insurer, the judgment creditor bears the burden of showing a judgment, the insurance policy, and facial coverage under the policy. *Id.* at 859. Once the judgment creditor establishes this prima facie case, it is incumbent upon the liability insurer to go forward with evidence creating a genuine issue of fact. *Id.* Where the evidence is entirely documentary or the decision is based upon an admission or stipulation by the parties, this Court is in as good a position as the trial court to determine its force and effect. *Williamson v. Rutana*, 736 N.E.2d 1247, 1249 (Ind. Ct. App. 2000). Thus, this court's review of the trial court's decision is de novo, and no presumption in favor of the trial court exists on appeal. *Id.*

The interpretation of an insurance policy is generally a question of law appropriate for summary judgment. *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind. Ct. App. 2008). We review an insurance policy using the same rules of interpretation applied to other contracts; if the language is clear and unambiguous, we will apply the plain and ordinary meaning. *Id.*

Here, we find that the Policy clearly and unambiguously excludes from coverage any "dishonest, fraudulent, criminal or malicious act or omission or deliberate omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any Insured." Appellant's App. p. 192. While the Policy *does* cover "any Claim arising out of any negligent act, error, [or] omission . . . committed by the Insured in the rendering or failure to render Professional Services for others," *id.* at 188, Jancetic has never alleged that Source One acted negligently. In his original complaint, he charged "[t]hat at the time [of] the representations relating to the hazardous conditions present on the property, both Defendant Hadu and Defendant Source One [], by and through its agent knew that these representations were false." *Id.* at 75. The complaint continued, "Source One [] made fraudulent representations to the Plaintiff in order to sell a home . . . ." *Id.* Moreover, Jancetic alleged that Source One "knew at the time they were making false representations that they were inducing the Plaintiff to buy a home that had hazardous conditions . . . ." *Id.* at 76. Although he amended his complaint to include another defendant, the allegations made against Source One remained the same. *Id.* at 91-94.

Further, at his August 17, 2015, bench trial, Jancetic only charged Source One with intentional behavior. His counsel told the court, "we have admissions by the realtor about things that he knew about the property before an offer was made." *Id.* at 101. Counsel showed the court a request for admission in which it was admitted that

> the realtor was informed that a water pipe burst in the house; and that, as a result, the entire floor of the house was replaced . . . [and] that on October 9, 2011, the realtor had informed the seller that there was a dip in the floor. And the floor was checked, and there was discovered water in the crawl space.

*Id.* at 101-02. Counsel then presented other evidence to show that "the realtor was informed there was a problem with [the] HVAC . . . ." *Id.* at 102. After showing the court a copy of the disclosure form, in which Hadu and Source One said there were no issues with the house, the trial moved on to establishing the amount of damages. Because he has never alleged that Source One acted negligently, Jancetic has failed to meet his initial burden of showing facial coverage under the Policy.

In different circumstances, we have held that "when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of noncoverage." *Salts*, 698 N.E.2d at 859. But this can only arise where "the insurer had notice of the litigation and an opportunity to control the defense." *Id.*

These circumstances are certainly not present in this case: unlike the insurer in *Salts,* who defended its insured's case at trial but failed to raise any defense of noncoverage, Mount Vernon asserted the defense of noncoverage from the first and had no further involvement in the case until the proceeding supplemental.

In short, Mount Vernon agreed to insure Source One against its negligence but not against its intentional misrepresentations. Jancetic has only ever alleged that Source One committed intentional misrepresentations and has never alleged that Source One was negligent. Finally, Mount Vernon has not engaged in any conduct that would estop it from asserting its defense of noncoverage. The trial court should have denied Jancetic's "Motion for Judgment" and granted Mount Vernon's motion for summary judgment.

The judgment of the trial court is reversed and remanded, with instructions to enter summary judgment in Mount Vernon's favor.

Vaidik, C.J., and Najam, J., concur.