


FILED

Oct 16 2025, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Transport Leasing/Contract, Inc.,

*Appellant-Plaintiff*

v.

Northland Insurance Company,

*Appellee-Defendant*

---

October 16, 2025

Court of Appeals Case No.
24A-CT-3066

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-2210-CT-34232

---

**Opinion by Judge May**
Judges Mathias and Bradford concur.

**May, Judge.**

Transport Leasing/Contract, Inc. ("TLC") appeals following the trial court's order granting summary judgment in favor of Northland Insurance Company ("Northland") and denying TLC's motion for summary judgment. TLC presents four issues, but we find one issue dispositive: whether Northland breached its contractual obligations to TLC, which was an additional insured on an insurance policy held by Weston Transportation ("Weston"), by not settling a claim alleging TLC was directly negligent in hiring a semitruck driver who was later involved in a fatal traffic accident. We affirm.

## Facts and Procedural History[1]

In 2015, TLC entered into an Exclusive Services Agreement (the "ESA") with Weston, a motor carrier company. The ESA provided "TLC will lease employees ('Assigned Employees')" to Weston during the term of the ESA and, except in temporary or emergency situations, Weston "agrees not to hire, lease, or use any employees other than Assigned Employees furnished by TLC." (App. Vol. 5 at 94.) Section Four of the ESA defined TLC's responsibilities:

> A. PROVISION OF ASSIGNED EMPLOYEES. TLC will provide Assigned Employees to [Weston] in accordance with [Weston's] expressed needs and as agreed between [Weston] and TLC. TLC will provide written notice of the relationship between TLC and [Weston] to each Assigned Employee when state law requires written notices.

---

[1] We heard oral argument in this matter on September 9, 2025, in Indianapolis. We commend counsel for their able presentations.

B. An applicant will become a TLC employee under [the ESA] after satisfying the following three step employment process: 1) completed TLC's required documentation; 2) been approved by TLC; and 3) been assigned to [Weston] to fill applicable job requirements. TLC may decline approval or offer of employment at its sole discretion. If the applicant performs any service for or at the direct request or direction of [Weston] prior to the completion of this three step process, the applicant shall be deemed to be employed solely and exclusively by [Weston] until such applicant's status as an employee of TLC is effective.

(*Id*. at 95.)

[3] The ESA also included mutual indemnification provisions. One provision required TLC to indemnify Weston:

TLC agrees to indemnify, defend, and hold [Weston] harmless, protect and defend [Weston], its officers, directors, employees, agents, and representatives from any and all liability claims, expenses including, but not limited to court costs and attorney fees, liabilities, and administrative penalties whether known or unknown which [Weston] may incur or for which it may become liable or which may be asserted or claimed against [Weston] as a result of TLC's breach of its responsibilities, warranties, and representation under Section Four of this [ESA], and/or its failure to comply with the obligations and commitments of TLC under this [ESA][.]

(*Id*. at 101.) A second provision required Weston to indemnify TLC if Weston's failure to abide by the terms of the ESA resulted in TLC incurring liability:

TLC shall not be responsible or held liable by [Weston] for any injury or damage to persons or property resulting from the use, misuse, or failure of any vehicles or equipment operated by Assigned Employees in the performance of TLC's services to be provided herein. This Indemnity shall, in no way, relieve TLC from its obligations to provide statutory Workers' Compensation and related employer's liability coverage for Assigned Employees; nor shall it relieve TLC for any damages or injury resulting from its negligent referral of Assigned Employees.

(*Id*. at 102.)

[4] Northland was Weston's insurer. Weston's insurance policy (the "Policy") included a limit of liability of $1,000,000 per accident. The Policy provided:

**MOTOR CARRIER COVERAGE FORM**

\* \* \* \* \*

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

\* \* \* \* \*

Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(App. Vol. 7 at 33-34) (emphasis in original). The Policy also included an endorsement naming TLC as an additional insured, "but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another 'insured.' This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form." (*Id.* at 144.)

[5] In June 2019, Bruce Pollard applied to be a commercial truck driver with Weston. Weston thought Pollard would be "a good fit" and forwarded his application to TLC. (App. Vol. 2 at 150.) TLC reviewed, investigated, and approved Pollard's application. TLC then assigned Pollard to drive for Weston.

[6] Pollard was driving a semitruck owned by Weston on July 14, 2019. His route required him to drive through a construction zone on Interstate 465 in Indianapolis near the Keystone Avenue exit. Pollard was traveling twenty miles per hour above the posted speed limit when he reached "for his iced tea to drink, and when he looked up[,] he saw that traffic had stopped." (App. Vol. 3 at 15.) Pollard rearended the last vehicle in the line of stopped traffic ahead of him and caused a chain reaction crash. The crash resulted in the deaths of Alanna Koons and her twin eighteen-month-old daughters as well as injuries to several of the occupants of the other cars involved in the accident. [2] Northland

---

[2] Pollard was arrested and charged with three counts of Level 5 felony reckless homicide, Ind. Code § 35-42-1-5, and eight counts of Class A misdemeanor reckless driving resulting in bodily injury, Ind. Code § 9-21-8-

learned of the accident soon after it happened and assigned Eileen Hartzell ("Northland Adjuster") to be the claims adjuster responsible for managing the claims against Weston related to the accident. Northland then hired attorney Christopher Whitten ("Weston Counsel") to represent Weston.

[7] On July 16, 2019, Northland Adjuster and attorney Michael Langford ("TLC Counsel") spoke on the phone. Northland Adjuster wrote in her claim notes: "[TLC Counsel] said if his client, TLC – who leased the driver to insured – is named in any lawsuit, he will tender the defense to [Northland]. Said that TLC is an Additional Insured on the policy." (App. Vol. 8 at 99.) On July 19, 2019, TLC Counsel sent a letter to Northland Adjuster that stated:

> Pursuant to the terms of the TLC [ESA], dated 3/23/25, Weston Transportation agreed to indemnify, defend and hold [TLC] harmless if TLC is sued by plaintiffs seeking damages for injuries suffered in the Accident.
>
> Weston Transportation is also required under the TLC [ESA] to name TLC as an additional insured under its auto liability policy with Northland insurance.
>
> Please consider this letter a formal tender of defense and indemnification to Northland Insurance Company.

---

52(a)(1). Pollard plead guilty but mentally ill to all counts. According to the Indiana Offender Locator, Pollard was released from incarceration on November 21, 2024. *See* Indiana Department of Correction Offender Locator, (2025), https://offenderlocator.idoc.in.gov [**https://perma.cc/63TE-A5RQ**]

(App. Vol. 3 at 9.)

[8]     On August 26, 2019, Weston Counsel sent Northland Adjuster a letter giving her a pre-suit status report related to the accident. Weston Counsel noted the "somewhat unusual arrangement" between TLC and Weston. (*Id.* at 23.) He observed:

> As you know, shortly after the subject accident, counsel for TLC reached out to both Northland and our office advising that it does not bear liability for any claims of the injured parties and that it expects to seek indemnification and defense from Northland Insurance. TLC cites Ind. Code § 27-16-4(a)(2)[3] in support of its position.

(*Id.*) (footnote added). In terms of an assessment of TLC's position, Weston Counsel stated:

> While there is no dispute that Pollard was operating on behalf of Weston at the time of the accident and pursuant to Weston's federal operating authority, we expect that a large component of the allegations that may come in any future lawsuit (including punitive damage claims) will deal with deficiencies in the background investigation and qualification of Pollard as a driver.

---

[3] Indiana Code section 27-16-7-4(a)(2) provides:

> (a) Except as expressly provided by the professional employer agreement:
> \* \* \* \* \*
> > (2) A PEO is not liable for the acts, errors, or omissions of a client or a covered employee of the client when the covered employee is acting under the express direction and control of the client.

A "PEO" is a "Professional employer organization . . . engaged in the business of providing professional employer services." Ind. Code § 27-16-2-13.

> As the [ESA] "expressly provides" that those areas are TLC's responsibility, we do not believe that the cited statute relieves TLC of all liability. Certainly, if TLC is absolved of all responsibility once it assigns a driver to a trucking company, then its responsibilities under the [ESA] (including for defense and indemnification) would be of little value. For that reason, we believe that this is an area that bears further monitoring as claims are presented.

(*Id*. at 23-24.) Weston Counsel explained Pollard's employment application contained "incomplete and misleading information regarding his driving history." (*Id*. at 24.) This included falsely indicating he had been in no crashes and failing to disclose his prior employment with Climate Express. The letter indicated that while driving for Climate Express, Pollard caused a rear-end collision because he failed to stop for slowed traffic, and Climate Express fired Pollard after a second reckless driving incident. Weston Counsel wrote that TLC discovered this information during its background check of Pollard. In addition, TLC found an additional employer Pollard had not disclosed on his application, Woody Bogler Trucking Company, and a 2018 citation for failing to yield. Weston Counsel wrote:

> Despite obtaining this information as part of its background investigation, TLC made the decision to hire Pollard nonetheless. Notes in the file indicate that someone from TLC discussed the prior accident with Pollard and apparently found his excuses to be reasonable.

\* \* \* \* \*

> The above evidence makes clear that TLC was aware that the information submitted on Pollard's application and for which he verified as true and accurate was, in actuality, false and misleading. However, we have to note that this information was also provided to Weston after TLC hired Pollard and at the time that it assigned Pollard to drive for Weston.

(*Id*. at 27-28.) With respect to damages, Weston Counsel concluded the potential value of the Koons Estate's claims and those of the other drivers "very easily exceeds $1 million." (*Id*. at 32.) Northland did not assign a separate adjuster or hire additional counsel specifically for TLC.

[9] On June 19, 2020, William Winingham ("Koons Estate Counsel") sent a demand to Weston asking it to pay $950,000 in addition to its insurance coverage to settle the Koons Estate's claims against it. On June 24, 2020, Koons Estate Counsel sent an email to TLC Counsel:

> I have just now gotten the [ESA]. This seems to raise two issues. First, is there any additional liability insurance coverage available to Weston and/or Pollard due to this Service Agreement with TLC, and if so, how much is it? Second, what is the liability of TLC for the damages suffered in this horrific accident? You may or may not know that a 'global mediation' is set . . . on August 28 with all claimants, so we will all have some work to do to prepare for that.

(App. Vol. 9 at 128.) TLC counsel replied that he "was not aware of the August 28 mediation, but I hope it goes well for the involved parties." (*Id*.) He also explained:

In response to your question about TLC's liability insurer, the answer is that TLC does not have additional liability insurance responsive to this loss. TLC is an insured under Weston's $1 million aggregate policy with Northland.

As to your question about TLC's liability, I believe there would be none. TLC is a professional employer organization. Therefore, its duties are governed by Indiana's PEO Act, Ind. Code Sec. 27-16-7-1, et. seq. . . . Weston Transportation, as a DOT authorized motor carrier engaged in interstate commerce, had sole the [sic] direction and control over Pollard, a commercial truck driver who was operating a commercial motor vehicle under Weston's operating authority.

(*Id*.) Koons Estate Counsel emailed Weston Counsel after receiving this response from TLC Counsel and expressed skepticism about TLC's position that it could not be liable: "[Weston Counsel], if TLC has any exposure here, it would be because they did not do what Weston expected in some way. The idea that maybe that [sic] would have to indemnify Weston for damages is a staggering possibility. That would help Weston and Koons both." (App. Vol. 3 at 40.)

[10] On August 10, 2020, Koons Estate Counsel sent a letter to TLC Counsel demanding $14 million from TLC to settle the Koons Estate's claims against it. Koons Estate Counsel accused TLC of not exercising reasonable care in performing its background check of Pollard and asserted that, if TLC had performed a proper background check, "it would have concluded that Mr. Pollard was not qualified to operate a semi-truck on public roads for several reasons under its own criteria." (App. Vol. 9 at 133.) The letter asserted

Pollard's poor driving record, his criminal history,[4] and his failure to disclose prior employers should have resulted in TLC denying Pollard's application. TLC Counsel did not inform Northland of the Koons Estate's settlement demand.

[11] On August 14, 2020, TLC Counsel wrote Northland Adjuster and Weston Counsel that, pursuant to the terms of the ESA and TLC's status as an additional insured, "TLC respectfully but strongly demands that TLC be included as released parties [sic] to all settlement, release and indemnification agreements secured with the claimants for the subject loss at the global mediation or any time thereafter." (*Id.* at 139.) On August 27, 2020, Northland Adjuster sent a letter to TLC Counsel informing him of the pre-suit global mediation set to occur on August 28, 2020. The letter explained:

> Our goal at mediation is to resolve all claims on behalf of any and all insured parties. However, due to the number of claimants and the value of the claims, it may not be possible to resolve all claims on behalf of all insureds within the available coverage. Accordingly, Northland reserves its right to settle some but not all claims as well as its right to settle claims on behalf of some insureds but not others. Again, it would be our wish to resolve all claims against all insureds, and that will be our primary goal at the mediation.

---

[4] Koons Estate Counsel wrote: "On June 5, 2017, Mr. Pollard was convicted of forgery (Felony Class C) and making a false report (Misdemeanor Class B) in the 12th Judicial Court of Missouri. As we understand it, Mr. Pollard forged a medical document in order to drive a semi-truck." (App. Vol. 9 at 132.)

(App. Vol. 3 at 46.)  The letter also stated that, pursuant to Northland's interpretation of the Policy, "TLC is an insured only to the extent that it is liable for the conduct of another insured" and "TLC does not qualify as an insured under the General Liability part of the policy."  (*Id*. at 47.)

[12]   TLC did not participate in the global mediation on August 28, 2020.  The mediation resulted in a settlement-in-principle whereby Northland agreed to pay the policy limit of $1 million and Weston agreed to pay an additional $600,000.  The release agreement explained the Koons Estate agreed "not to pursue any claim against TLC for vicarious liability for any conduct of" Pollard, Weston, or Northland.  (*Id*. at 80.)  However, the clause also provided:

> This release does not encompass, and [the Koons Estate] specifically reserves the right to pursue claims against TLC for damage or injury resulting from TLC's conduct, including negligent screening, hiring, retention, or referral of Pollard that caused or contributed to the July 14, 2019 crash resulting in the deaths, injuries, and damages being claimed.  This release is not intended and shall not be construed to confer any rights or benefits to TLC, or any other person or entity except Koons and the Released Parties.

(*Id*.)  On September 2, 2020, Northland Adjuster emailed TLC Counsel to inform him of the mediation result:

> Northland Insurance Company has committed to paying the combined single liability policy limits to resolve the injury claims, and we have a tentative settlement agreement amongst the injured claimants . . . .  Although we asked for and attempted [to]

have TLC included in the release, the attorney for the Koons
family has not agreed to release TLC in this matter.

(App. Vol. 9 at 207.)

[13]     The Koons Estate then filed suit against TLC and several other entities.  The
complaint alleged TLC failed "to use reasonable care in screening and
evaluating Mr. Pollard's application before approving, referring, and
recommending him to operate a commercial vehicle on public roads for Weston
Transportation."  (App. Vol. 3 at 100.)  TLC answered that it was an additional
insured under the Policy and filed a third-party complaint against Weston and
Northland alleging claims of breach of contract and bad faith.  TLC agreed to
pay the Koons Estate $2.45 million to settle the Estate's claims against TLC.
TLC also agreed to pay $250,000 to the other individuals injured in the accident
to settle their claims against TLC.

[14]     TLC then severed its third-party complaint against Weston and Northland from
the Koons Estate's lawsuit.  On April 15, 2024, both TLC and Northland filed
motions for summary judgment.  TLC asserted Northland "utterly and
repeatedly failed in duties owed to TLC as an insured."  (App. Vol. 2 at 33.)  It
argued Northland committed breach of contract and bad faith by not assigning
a separate adjuster or counsel to TLC, by providing misleading or incorrect
information about TLC to the Koons Estate, by misrepresenting facts about
Northland's efforts to secure a release for TLC, and by making "payments to
Weston counsel to research and build indemnity claims by Weston against
TLC[.]"  (*Id*. at 32.)  Northland asserted in its motion for summary judgment:

> Northland simply did the best that it could to investigate and settle multiple wrongful death, bodily injury, and property damage claims arising out of a catastrophic and devasting accident. The actions taken by Northland in investigating and settling the claims that it could were consistent with its rights and obligations under the Northland policy and applicable Indiana law, and there is no factual evidence that TLC can rightfully identify that supports its claims in this suit. Simply put, Northland did not breach its insurance policy as to TLC; it did not engage as a matter of law in any alleged bad faith conduct; and TLC was not entitled to coverage under the Northland policy for the claims that were ultimately made against it.

(App. Vol. 6 at 54-55.) After additional briefing, the trial court held oral argument on the parties' cross-motion for summary judgment on July 1, 2024.

[15] On November 21, 2024, the trial court entered a thirteen-page order granting Northland's motion for summary judgment and denying TLC's motion for summary judgment. The trial court concluded the Koons Estate's claims against TLC were excluded from the Policy's commercial general liability coverage and Northland's duty to defend any insured terminated once it paid the $1 million Policy limit. The trial court explained: "There is no support for the proposition that an insurer must either resolve all claims against all of their insureds or none. In fact, such a proposition would inhibit resolution of complex cases as one insured could hold a settlement process hostage to the detriment of the others." (App. Vol. 2 at 24.) The trial court also ruled that TLC's bad faith claims failed as a matter of law because Northland acted according to its duties under the Policy and Indiana law. The trial court concluded that "Northland acted reasonably and appropriately in paying its

policy limits toward the settlement of the claims that it could settle, and therefore did not act in bad faith." (*Id*. at 27.) In addition, the trial court stated Weston Counsel's communications with Koons Estate's Counsel were made in the best interest of Weston and were not evidence of "collusion" or imputable to Northland. (*Id*.) The trial court observed there was no evidence of Northland acting to deceive TLC by purposefully misrepresenting any fact or its coverage under the Policy. Pursuant to Trial Rule 56(C), the trial court entered final judgment in favor of Northland.

## Discussion and Decision

[16] TLC challenges the trial court's grant of summary judgment in favor of Northland. We review a trial court's order on a motion for summary judgment de novo and apply the same standard as the trial court. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 439 (Ind. 2015). "Summary judgment is proper only 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Korakis v. Mem'l Hosp. of South Bend*, 225 N.E.3d 760, 764 (Ind. 2024) (quoting Ind. T.R. 56(C)). We draw "all factual and reasonable inferences in favor of the non-moving party." *Isgrig v. Trs. of Ind. Univ.*, 256 N.E.3d 1238, 1244 (Ind. 2025). We are "not bound by the trial court's findings and conclusions and will affirm if the trial court's entry of summary judgment can be sustained on any theory or basis in the record." *Id*. "[T]he filing of cross-motions for summary judgment neither alters this standard nor changes our analysis, in that we consider each motion separately to determine whether the

moving party is entitled to judgment as a matter of law." *Elpers Bros. Constr. & Supply, Inc. v. Smith*, 230 N.E.3d 920, 927 (Ind. Ct. App. 2024), *trans. denied*.

[17] TLC contends a contractual relationship existed between it and Northland by virtue of TLC's status as an additional insured on the Policy and that Northland breached that contractual relationship when it did not settle the Koons Estate's claims against TLC alleging TLC was negligent in its screening and approval of Pollard at the global mediation. A breach of contract claim requires the plaintiff to prove three elements: "(1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). "Insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law." *Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 569 (Ind. Ct. App. 2011), *trans. denied*. "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the policy, and we construe the policy as a whole and consider all of the provisions of the policy and not just individual words, phrases, or paragraphs." *Peabody Energy Corp. v. Roark*, 973 N.E.2d 636, 640 (Ind. Ct. App. 2012), *aff'd on reh'g*, 978 N.E.2d 503 (Ind. Ct. App. 2012), *trans. denied*. We "must give a contract's clear and unambiguous language its ordinary meaning. Courts may not construe clear and unambiguous provisions, nor may courts add provisions not agreed upon by the parties." *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 211 (Ind. 2022) (internal citation omitted).

[18]     The Policy's additional insured endorsement made clear that the Policy only insured TLC to the extent TLC was vicariously liable for the covered conduct of Weston. It stated Northland's coverage of TLC as an additional insured was limited to only damages covered by the Policy and "only to the extent of that person's or organization's liability for conduct of another 'insured.'" (App. Vol. 7 at 144.) The additional insured endorsement stated it "does not alter coverage provided in the Coverage Form." (*Id.*) The Policy covered "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Id.* at 33.) Thus, Northland's coverage of TLC as an additional insured under the Policy was limited by the language of the Policy to cover damages resulting from Pollard's negligent driving, and Northland's settlement with the Koons Estate resolved the estate's claims against TLC asserting TLC was vicariously liable for Pollard's negligent driving.

[19]     The plain language of the Policy did not cover claims against TLC related to TLC's direct negligence, and the Koons Estate's negligent hiring claim against TLC alleged TLC was directly negligent because of its flawed review and approval of Pollard's employment application. The ESA provided Weston did not have a duty to indemnify TLC "for any damage or injury resulting from its negligent referral of Assigned Employees." (App. Vol. 5 at 102.) Thus, it would be illogical to hold the Policy protected TLC against such claims because TLC's coverage under the Policy derived from the Policy's coverage of Weston

and Weston was not responsible for such claims. Consequently, because the Policy did not cover the negligent hiring claim brought by the Koons Estate against TLC, Northland could not have breached any of its obligations to TLC under the Policy.[5] *See*, *e.g.*, *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001 (Ind. 2009) (holding insurer did not owe a duty to defend security contractor against a negligence claim brought by the estate of a deceased liquor store employee because the security contractor's insurance policy did not provide coverage for such a claim). For these same reasons, Northland did not act in bad faith when it refused to cover the Koons Estate's negligent hiring claims against TLC. *See*, *e.g.*, *Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 30 (Ind. Ct. App. 2002) (holding insurer was entitled to summary judgment on claim alleging bad faith when designated

---

[5] TLC also asserts that there were "concerted efforts by Northland and its named insured and the named insured's counsel to 'sell out' and deceive TLC[.]" (Appellant's Br. at 20.) It contends the Koons Estate only learned of the relationship between TLC and Weston during the pre-suit discovery exchange of information "because Northland's agent, [Weston Counsel], who Northland was paying throughout that time period, was communicating with [Koons Estate Counsel] about 'failures and breaches' by TLC while Northland sat idly by." (*Id.* at 36.) However, even though Northland paid Weston Counsel, Weston Counsel's primary duty was to Weston. *See* Ind. R. of Prof. Conduct 1.7, cmt 13 ("A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client.") Part of protecting a client's interest is assessing what other parties are potentially liable, and an attorney cannot be loyal to the attorney's client if the attorney is worried about potential liability from third parties who wish not to be held responsible for their actions. *See*, *e.g.*, *Keybank Nat. Ass'n v. Shipley*, 846 N.E.2d 290, 300 (Ind. Ct. App. 2006) (holding creditor of receivership could not sue attorney for receiver for negligence for failing to protect the creditor's interest because if allowed the attorney's concern for third parties could contravene the attorney's duty of loyalty to the attorney's client), *trans. denied*. Therefore, TLC's argument that the actions of Weston Counsel somehow resulted in a breach of Northland's obligation to TLC is misplaced.

evidence showed its coverage denial decision was made in good faith and based upon a rational basis), *trans. denied*.

## Conclusion

[20] Northland was entitled to summary judgment on TLC's breach of contract claim because the plain language of the additional insured endorsement naming TLC as an additional insured on the Policy did not cover the Koons Estate's claims against TLC that arose from TLC's direct negligence. For that reason, Northland was also entitled to summary judgment on TLC's claim alleging bad faith. Accordingly, we affirm the trial court.

[21] Affirmed.

Mathias, J., and Bradford, J., concur.

ATTORNEYS FOR APPELLANT

Andrew F. Marquis
Steven A. Pletcher
Peter C. Morton
Scopelitis Garvin Light Hanson & Feary, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Dina M. Cox
Michael R. Giordano
Edmund L. Abel
Lewis Wagner, LLP
Indianapolis, Indiana